| | | |
|---|---|---|
| JOY BURGESS | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | DOCKET NO.: 3:18-cv-119 |
| | ) | |
| BLUEGREEN VACATIONS UNLIMITED, | ) | Mattice/Poplin |
| INC.,  BLUEGREEN CORPORATION, | ) | |
| VACATION TRUST, INC., and | ) | |
| BLUEGREEN VACATION CLUB, INC., | ) | |
| And KELLY NICOLE | ) | |
| | ) | |
| Defendants. | ) | |

## FIRST AMENDED COMPLAINT

COMES NOW the Plaintiff, Joy Burgess, (hereinafter referred to as "Plaintiff"), and for her Amended Complaint against Bluegreen Vacations Unlimited, Inc., Bluegreen Corporation, Vacation Trust, Inc., and Bluegreen Vacation Club, Inc., and Kelly Nicole, (hereinafter referred to jointly as "Bluegreen" or "Defendants") states as follows:

### PARTIES

1.      The Plaintiff is a sixty-seven (67) year old woman who resided in Virginia at all times relevant to this Amended Complaint.

2.      The Plaintiff purchased Bluegreen points and timeshares totaling over $100,000.

3.      Plaintiff purchased a Bluegreen timeshare while vacationing in Sevierville, Tennessee, on approximately September 9, 2014.

4.      Plaintiff also purchased a Bluegreen timeshare while vacationing in Myrtle Beach, South Carolina on or around March 12, 2015.

1

5.      Defendant Bluegreen Vacations Unlimited, Inc. was listed as "Club Developer" in the Certificate of Owner Beneficiary Rights. It is a corporation formed in Florida and licensed to do business in Tennessee. Its principal office is at 4960 Conference Way N Ste 100, Boca Raton, FL 33431-3311.

6.      Bluegreen Vacations Unlimited, Inc. can be served through it registered agent, Corporation Service Company at the following address: 2908 Poston Ave., Nashville, TN 37203.

7.      Defendant Bluegreen Corporation provided the Plaintiff with a "30 DAY SAME AS CASH PAYOFF COUPON" at the closing, telling the Plaintiff she could pay off their balance by paying Bluegreen Corporation. Bluegreen Corporation also is the entity to which the Plaintiff was instructed to send her payments. It is a corporation formed in Florida and licensed to do business in Tennessee. Its principal office is at 4960 Conference Way N, Ste. 100, Boca Raton, FL 33431-3311.

8.      Bluegreen Corporation can be served through its registered agent, The Prentice-Hall Corporation System, Inc., at the following address: 2908 Poston Ave., Nashville, TN 37203.

9.      Defendant Vacation Trust, Inc. is named as the Plaintiff's Trustee in the Bluegreen Owner Beneficiary Agreement. It is a corporation formed in Florida and licensed to do business in Tennessee. Its principal office is at 4950 Communication Ave., Boca Raton, FL 33431-3315.

10.      Vacation Trust, Inc. can be served through its registered agent, Corporation Service Company, at the following address: 2908 Poston Ave., Nashville, TN 37203.

11.      Defendant Bluegreen Vacation Club, Inc. is a corporation formed in Florida. Its principal business office is 4950 Communication Avenue, Suite 900, Boca Raton, FL 33431.

12.      Bluegreen Vacation Club, Inc. can be served through its registered agent, Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

13.     Defendant Kelly J. Nicole is an agent, representative, and/or employee of Bluegreen who had supervisory authority over and made personnel decisions over the sales staff. She is a Wisconsin resident and can be served at Bluegreen's sales center in Wisconsin. Counsel has accepted service of process on her behalf by agreement.

## JURISDICTION AND VENUE

14.     This Court has jurisdiction and venue over this Complaint pursuant to Tenn. Code Ann. §20-4-104(1) as a substantial part of the events or omissions giving rise to this cause of action accrued in Sevier County. Moreover, one of the timeshare contracts or agreement which is the subject matter of this lawsuit was executed at Developer's place of business in Sevier County, Tennessee.

15.     This Court has jurisdiction and venue over this Complaint pursuant to Tenn. Code Ann. §20-2-214(a)(6) as Defendants purposely availed themselves of the privilege of transacting business in Tennessee to such an extent that the activity has reasonably foreseeable impact on commerce in Tennessee; and Tennessee has enough interest in the controversy to make it reasonable to compel Defendants to defend themselves in Tennessee. Specifically, the Defendants negotiated and executed at least one agreement with the Plaintiff at the Defendants' place of business in Sevierville, Tennessee.

16.     Jurisdiction is proper in the State of Tennessee because:

    a.  Bluegreen transacted business with Plaintiff within the State of Tennessee; therefore, Bluegreen has conducted business in Tennessee. Tenn. Code Ann. § 20-2-201(b).

    b.  The acts and omissions made the subject of this Complaint occurred within the State of Tennessee while Bluegreen was transacting business in this state; therefore,

3

Bluegreen has submitted to this jurisdiction. Tenn. Code Ann. § 20-2-214(a) and (c).

c.  Defendant Nicole is an employees/agents of Bluegreen, who conducts business in the State of Tennessee. Bluegreen is vicariously liable for the fraudulent, intentional and/or negligent acts or omissions of Defendant Nicole by the doctrine of *respondent superior*.

d.  The Defendants have "continuous and systematic" contacts with the State of Tennessee sufficient to establish personal jurisdiction.

e.  In addition, Bluegreen owns and/or operates at least two (2) timeshare properties and other resorts located in Tennessee.

f.  Bluegreen has several offices located in Gatlinburg, Tennessee.

g.   Bluegreen conducts large scale marketing and sales activities within the State of Tennessee, including but not limited to direct mail, email, telemarketing, internet distribution channels, travel agencies and other partners.

h.  Bluegreen marketed and sold timeshares within the State of Tennessee.

i.  Plaintiff bought a timeshare interest with Bluegreen.

j.  Bluegreen's Timeshares consist of real property, known as component sites.

k.  One of these component sites is physically located in Sevier County, Tennessee.

l.  The Bluegreen Defendants are contractually obligated to render services at their components sites, including the component site located in Sevier County, Tennessee.

m.   Plaintiff was damaged at each of these locations including Sevier County, Tennessee.

n.  Plaintiff has the right to use facilities in the Tennessee component sites.

o.  Plaintiff has the right to obtain reservations at the component sites located in Tennessee.

p.  Plaintiff has the right to rent to 3rd parties the facilities at the component sites in Tennessee.

q.  Defendants have employees that work in Tennessee at the various component sites.

4

r.  Plaintiff has the right to use, possess and enjoy the component sites located in Tennessee.

s.  Bluegreen filed several Tennessee Timeshare Public Offering Statements with the Tennessee Real Estate Commission and annually submits renewal applications to the Commission including payment of renewal fees using a Bluegreen check and has agreed to be regulated by the Tennessee Real Estate Commission.

t.  Plaintiff purchased Bluegreen timeshares and was induced into signing timeshare documents in the State of Tennessee.

17.   Venue is proper in Sevier County because:

a.  The unfair and deceptive acts and practices described herein took place, and continue to take place, in Sevier County, Tennessee.

b.  Bluegreen has a sales office at and the sale of at least one of Plaintiff's timeshare transactions occurred in Sevier County, Tennessee.

c.  Defendants own component sites located in Tennessee and the Plaintiff has usage and possessory rights to these sites.

18.   Any purported forum selection clause Plaintiff allegedly agreed to is invalid, to the extent that the contract at issue in this case, and each portion thereof, was fraudulently induced, as well as each transaction Plaintiff has ever had with Bluegreen. Specifically, in Tennessee, "fraud in the underlying transaction renders a contract clause, such as the forum selection clause at issue here, unenforceable."  See *Lamb  v. Megaflight,* 26 S.W.3d 627 (Tenn. Ct. App. 2000).

19.   Since the Plaintiff is seeking rescission of the contract at issue in this case pursuant to the Tennessee Time-share Act of 1981, and Tennessee common law, and since Plaintiff entered into at least one of these contracts in Sevier County, Tennessee, jurisdiction and venue are proper in

Sevier County, Tennessee, irrespective of any statements to the contrary in the fraudulently induced documents.

20.     The Plaintiff would not have entered into any portions of her contracts, including the forum selection clause, had it not been for the misrepresentations, duress, and/or abuse of economic power, and the unconscionability of the entire agreements.

21.     Venue and Jurisdiction are proper in Tennessee because any other state would be a substantially less convenient place for the trial in this action.

22.     It is not unreasonable or unfair to the Defendants to defend the action in Tennessee as they own multiple properties in Tennessee, have a registered agent in this state, and conduct widespread marketing and sales in the state of Tennessee. Plaintiff purchased from Defendants in the State of Tennessee.

## FACTS

### Defendants

### Background of Bluegreen Timeshare Sales Mode of Operation

23.     All persons who own Bluegreen timeshares receive a symbolic point allocation based upon their ownership interest.

24.     These membership points are renewed annually or biennially for alternate year ownership, and are used to reserve accommodations through a reservation system owned and maintained by Bluegreen.

25.     Historically, when an owner bought a timeshare from Bluegreen they received a deed for the unit portion of the property, or undivided real property interest, they purchased. The value of their ownership, however, is represented by points.

26.     Deeds are issued many weeks past the actual purchase date.

6

27.     Based on knowledge and belief, the more timeshare properties one buys, the more points that are allocated to their account. Bluegreen represented to the Plaintiff that the points allocated to Plaintiff's account could be used to book a reservation at any Bluegreen resort, because they bought into a trust.

28.     Approximately 70% of all Bluegreen timeshare sales are upgrades to existing members.

29.     Bluegreen does not disclose that timeshare points are an illiquid asset with no aftermarket, making it impossible for the Plaintiff or other owners to resell their Bluegreen timeshares.

30.     Plaintiff only discovered this fact after she looked into or attempted to sell her Bluegreen timeshares and discovered there is no market to purchase her Bluegreen timeshare points.

**Common Participation in Scheme to Defraud**

31.     Plaintiff avers, upon information and belief that the Bluegreen Defendants, through its employees such as agents, officers, managers, etc., have created a common scheme and practice to defraud and misrepresent material facts and/or omissions to would-be timeshare purchasers and current owners.

32.     It is through the cooperation and planning of the individuals listed above that the overall scheme is carried out and completed

33.     The scheme is put into place long before the would-be purchaser is encountered and in fact starts when a new employee is hired.

34.     After the initial training period is completed, a new sales representative is assigned a sales center job. From the beginning, at the sales center, the new representative is taught to forget everything they learned in their training class.

35.     On-the-job training starts at that point and the new hire is trained on how the sales process really works.

7

36. This on-the-job training program is sanctioned by, participated in, and designed by employees, corporate officers, managers, quality assurance representatives, podium presenters, sales meeting schedulers, and others.

37. Many of these employees receive additional compensation or bonuses as a result of timeshare sales, and are therefore encouraged to keep participating in this scheme.

38. Others Bluegreen agents and employees are basically bullied into going along with the scheme for fear of losing their employment if they were to refuse.

39. The scheme begins with getting a family into a sales presentation. This is usually done by offering a gift or telling an existing owner it is a mandatory "owner update meeting," both of which are a deceitful tactics to get person to unwittingly agree to attend a long high-pressure sales presentation.

40. Although the time of these presentations is often represented to be 45 to 90 minutes long, these presentations often go on for many hours, such as was the case with Plaintiff Burgess.

41. Once a person is in the sales meeting, it is common place for sales agents to violate the applicable timeshare statutes.

42. For example, a false sense of urgency is often created by telling the person that an offer is good for that day only.

43. The timeshare is often represented as a good investment

44. Owners are often told the timeshare can be rented for a profit or to cover monthly maintenance fees.

45. Persons are also often told that reservations can be obtained at various different resorts while knowing reservations for owners are greatly restricted.

46. These violations of various statutes are done by the sales representatives and done with the full knowledge and encouragement of the supervisors, managers, and officers.

8

47.     If the person agrees to purchase, "closing" is completed by a quality assurance representative. The stated purpose of this is to protect the buyer from fraud but in actuality this is another part of the fraudulent scheme.

48.     The quality assurance ("QA") employees, know the process and questions to ask to make sure the buyer does not state something that would cause the deal not to close. In fact, it is common for the buyer to be coached before the closing on the "correct" answers to the QA's questions, such as Chad Acee did with Plaintiff Burgess.

49.     Even though the purchasers are told and promised many things by the sales representative, purchasers are told not to repeat these to the QA representative or the deal would be stopped.

50.     In the actual closing, buyers are shown and must sign dozens of documents without sufficient time to review and understand them,

51.     Often time the buyer is required to sign documents indicating sales representatives did not say the misleading things detailed above. However, this is just a transparent attempt for Bluegreen to insulate itself from liability.

52.     Further, the only part of the entire process that is recorded is the closing. The sales presentation is not recorded in a further attempt by Bluegreen to insulate themselves from liability and to make sure there is no record of the violations of law occurring by the sales agents.

53.     This scheme was the same one encountered by Plaintiff Burgess in her purchases, wherein they started with the presentation scheduler and ran all the way to the QA representative, and the acts that occurred by all Defendants, were sanctioned by Wyndham's managers and officers.

54.     The majority of these employees involved in this common scheme are compensated through a bonus and/or commission method based on sales, managers and vice presidents, who encouraged such fraudulent, unlawful, and scheming practices.

9

## PLAINTIFF'S TRANSACTIONS

**September 9, 2014 Purchase in Sevierville, TN, contract #858348**

55.     Plaintiff, already a Bluegreen Owner, was told she needed to attend a mandatory 45 minute owners update meeting which turned into a multiple hour high-pressure sales presentation.

56.     It was at this presentation that the Plaintiff encountered Kelly Nicole.

57.     Nicole convinced the Plaintiff, to purchase a timeshare upgrade totaling approximately $13,500.

58.     Nicole kept plaintiff for 3-4 hours even though Plaintiff was visibly upset and crying.

59.     Plaintiff told Kelly that she was already $20,000 in debt and could not afford more to which Nicole responded that $20,000 was not much and that she must not be using the program correctly.

60.     Nicole told Plaintiff there were changes to the program and if Plaintiff were to buy 4,000 more points Plaintiff would get to take advantage of these changes.

61.     Nicole told Plaintiff if she purchased she would personally help Plaintiff rent them out and then sell it to make a profit.

62.     Defendant Nicole even gave the Plaintiff her cell phone number which she said was 608-566-5158, and told Plaintiff to call her for assistance. This is a direct violation of Bluegreen policy, as all calls are supposed to be recorded, and cell phones cannot be recorded.

63.     Nicole specifically told Plaintiff to tell the closing agent that this purchase would not create any financial stress or burden, when in reality it was a great burden upon the Plaintiff.

64.     The fraudulent and misleading statements or omissions which occurred on this date are further detailed in the below counts. Each of the misleading and fraudulent statements described in the below paragraphs were made by Nicole on September 9, 2014.

10

**March 12, 2015 Purchase in Myrtle Beach, South Carolina, contract #88518**

65.     Plaintiff, already a Bluegreen Owner, was told she needed to attend a mandatory 45 minute owners update meeting which turned into a multiple hour high-pressure sales presentation.

66.     At this meeting she encountered Bluegreen employees, Sales Agent Chad Acee and Manager Erik Less.

67.     Plaintiff only attended the meeting to tell the employees how upset she was about the programs and previous deceptions she had experienced from Bluegreen.

68.     Acee said he was there to help Plaintiff and that he was the very best in customer service and even had many trophies on his desk showing how great he was at it.

69.     Acee told Plaintiff she reminded him of his own mother so he was going to assist her with the big changes to the program.

70.     Acee went so far as to tell Plaintiff he would assist her anytime and be her personal representative, and gave her his cell phone number which was 865-356-7747. This is a direct violation of Bluegreen policy, as all calls are supposed to be recorded, and cell phones cannot be recorded.

71.     Acee told Plaintiff she could save money by putting her purchase and future items on a new Bluegreen Credit Card.

72.     Acee told Plaintiff that Bluegreen was running low on points so any time she wanted out she could sell her points for $3.25 a point.

73.     Acee told Plaintiff not to tell anyone about these developments and even that he would rent her some of his own personal points.

74.     Acee told Plaintiff all she had to do to get all of these perks was to purchase 4,000 more points and not to tell the closing agent any of this would be a financial burden. Instead Acee told

11

Plaintiff to specifically lie to the closing agent by saying "I want more vacation time" because "I do not want to lose my job."

75.     She was also pressured by Erik Less and Susan Furbee to make this purchase.

76.     Plaintiff has become so distraught over the dire financial straights that the Bluegreen timeshare agents coerced her into that her hair is falling out, she has nightmares about her debt, and is showing other signs of depression and anxiety.


**The Sales Process**

77.     Plaintiff was told that she was buying a vacation dream, but, it turned into a nightmare.

78.     Bluegreen timeshare owners are coerced, forced, and/or required to attend "owner update" or other meetings that are intended for no purpose other than to manipulate and pressure the owners to buy additional timeshare points.

79.     Such high pressure by Bluegreen often confused the Plaintiff, causing her to misunderstand what she was purchasing, what they were trading, and the actual terms and conditions of the purchase.   For example, Plaintiff got home and found charges on a Barclay rewards card, or PayPal account, which she did not authorize or understand that she was authorizing.

80.     Plaintiff ended up owning more points than they can use, because after the initial purchase, they are told each time they vacation that they had to attend an owner "update" meeting, which every is led to believe is mandatory. These updates are supposed to last 45 minutes, but in reality, they usually end up being a 4-5 hour high pressure sales job.

81.     During the multi hour-long high-pressure sales presentations, Plaintiff was not allowed to leave, causing confusion and misunderstanding regarding the nature of what the Plaintiff was purchasing, the actual terms and conditions of the timeshare purchases, the value of Plaintiff's

12

timeshares (being traded or purchased), and the authority of the Defendants to negotiate the terms of the timeshare transactions.

82.     Consequently, Bluegreen and its agents made material false statements upon which the Plaintiff relied in deciding to purchase Bluegreen timeshares, and then misleading her into buying additional largely worthless timeshare points without actually offering anything of value in return.

83.     Bluegreen engaged in a variety of other deceptive sales tactics. These deceptive tactics are used company-wide with the knowledge, endorsement and encouragement of senior management.

84.     Bluegreen's deceptive tactics are part of its corporate philosophy to make every sale at any cost. This corporate philosophy is pervasive and drives the need for the use of these deceitful tactics.

85.     At each meeting, Plaintiff was told by Bluegreen sales representatives that she needed to purchase additional Bluegreen timeshare points in order to achieve several of Plaintiff's "goals," including the future sale or use of her existing Bluegreen timeshares.

86.     Defendants now mostly sell timeshares with a "points" system, rather than a traditional "fixed week" or deed.

87.     With points, there is no limit to the amount of inventory that can be sold, monitored for overuse, and ownership is highly diluted.

88.     During the sales presentation in Gatlinburg, Plaintiff was told by Defendant Nicole numerous false statements by Bluegreen's sales agents to induce them to purchase the additional Bluegreen timeshare points including but not limited to the following:

a. Plaintiff was told by Nicole that she could rent the timeshare out for profit. That was not the case. In addition, she was told that she could rent her points to offset maintenance fees. This was also not the case.

b. Plaintiff was told that the timeshare was a good investment.

c. She was told by Nicole that she did not need to worry about putting the purchase on a credit card because when she got home she could just refinance with her bank. She found out that was untrue and she could not, and she was stuck with a high interest rate financing her last purchase, which she would not have made had she known the truth that refinancing would not be available to her.

## Unavailability of Reservations, Unlawful Taking

89. One of the most common ongoing problems Plaintiff has experienced with the timeshares is the unavailability when trying to make reservations.

90. However, when resorts and dates are blacked out and unavailable on the Bluegreen reservation system, the resorts show availability for the same time on various travel websites.

91. Upon information and belief, reservations are difficult for Plaintiff and other similarly situated Bluegreen timeshare owners because Defendants are manipulating the reservation system in order to obtain access to accommodations, reservations, and rooms for its own financial interests and contrary to the interest of the timeshare owners.

92. Defendants will rent these accommodations through various means such as online marketing companies, and keep the revenue for company profit, all the while denying timeshare owners access to these reservations.

93. Furthermore, Defendant uses the rooms as marketing tools so as to give free or low cost vacation rentals to potential timeshare purchasers, which also decreases availability of rooms, also denying timeshare owners access to accommodations – accommodations the Plaintiff and other similarly situated owners have paid for, and continue to maintain through yearly maintenance fees.

94.    This is possible because Bluegreen controls all aspects of the reservation system, through its association with the Trust, which constitutes an illegal civil conspiracy, since these entities deprive the Plaintiff and other similarly situated timeshare owners of their personal and real property rights.

**The Rental Pitch**

95.    There is a limited universe of new client prospects capable of and willing to buy timeshares.

96.    Therefore, Bluegreen had to find other potential sources to buy timeshare points. Bluegreen, therefore, developed ways to entice current owners to buy more timeshare points. Bluegreen created the "Rental Pitch" and trained its sales representatives to use the "Rental Pitch" as a tactic to lure people, including Plaintiff, to buy.

97.    Each time Plaintiff attended a sales meeting, the Bluegreen sales agents told her that the timeshares would greatly increase the amount of rental income Plaintiff would receive because the timeshares being purchased from Bluegreen were in very high demand and would bring in more income from rentals of the timeshares.

98.    Plaintiff was told that the timeshare would pay for itself in that the amount of rental income Plaintiff would receive would cover the mortgage and maintenance fees. Sales persons often told Plaintiff and similarly situated timeshare owners they could rent their timeshare to pay for it.

99.    Plaintiff was also not told she will be competing with Bluegreen on the open market who rents out the resorts on the Internet on sites like Orbitz, Hotels.com, and Hotwire.

100.    Defendants have a policy against the Rental Pitch because it is inherently misleading, gives false assurances, is a high-pressure sales tactic that lures people into buying more than they can afford, and is a violation of Timeshare laws in many states.

101.    However, Bluegreen's deceptive tactic is to have Plaintiff and similarly situated timeshare owners then sign a document saying they were not told or promised rental as part of the sales presentation, when in reality, it is a pitch Plaintiff got with each purchase, and it is routinely done by Bluegreen agents.

## The Closing Process Is Part of the Scam

102.    It is the common practice and scheme of the Defendants, through its agents, to purposely make misrepresentations during the sales presentation. This is done with the full knowledge of Defendants and the management.

103.    However, in order to limit their liability, Defendants then, during the "closing" process, which includes signing documents, deliberately and fraudulently attempt to get Plaintiff to sign statements that disavow that such fraudulent statements were made by the sales agents.

104.    This is a common scheme involving multiple employees and agents of the Defendants, in a civil conspiracy.

105.    In other words, Bluegreen knows the misleading or false statements the sales agents will be using to con or induce sales to Plaintiff and other similarly situated timeshare owners or potential owners, but then have people sign something during closing saying they were not told false statements or that violations of the Tennessee Timeshare Act occurred.

106.    Moreover, each Bluegreen timeshare contract closing required the Plaintiff to sign and/or initial numerous separate contracts or other documents often numbering up to 30 separate agreements and/or documents, and some documents numbering over 700 pages.

107.    Bluegreen required the Plaintiff to sign numerous contracts or documents that internally referred to separate additional documents that were never presented to or signed by the Plaintiff or were hundreds of pages long, and could not possibly be reviewed in one sitting, and especially

16

without a lawyer. For example, Plaintiff was forced to sign documents stating that she had received them, but in reality, there was no way for Plaintiff to review such complicated and lengthy legal documents.

108.    Plaintiff was never afforded an opportunity to seek legal or accounting advice before signing any of the Bluegreen timeshare contracts and/or documents, which is shocking to the conscience, when the Plaintiff is indebting herself to tens of thousands of dollars of long-term debt, at high interest rates, with little aftermarket re-sale value.

109.    Plaintiff was not allowed to read through the Bluegreen timeshare contracts and other documents. In addition, Plaintiff was on vacation, but was told they would only expend "45 minutes" at their owner's update meeting, but it turned into hours. To review all the documents, Plaintiff would have spent countless hours of precious vacation time having to look at all the documentation at that time.

110.    Plaintiff often signed the Bluegreen timeshare contracts without being given an opportunity to read them because of being tired, hungry, pressured, harassed, and/or bullied into signing.

111.    Bluegreen's employees, agents and/or representatives, would not allow the Plaintiff an opportunity to read the timeshare contracts or other documents without a Bluegreen agent or representative being present.

112.    Bluegreen rushed the Plaintiff through the execution of each timeshare contract and other documents.

113.    The timeshares purchased by the Plaintiff were represented by Bluegreen's employee's agents and/or representatives as sound financial investments, stating that because the unit was prime real estate, the timeshare would increase in value.

114.    Plaintiff was often rushed through the contract closing process by Bluegreen sales agents in order to hide certain material terms and conditions of the timeshare contracts, including that the

Plaintiff was or was not trading one or more timeshares to purchase additional timeshares, or consolidating all of her Bluegreen timeshare properties and explaining to them the value/credits/trade-in she would be receiving, causing significant confusion and misunderstanding on the part of the Plaintiff.

115.    Plaintiff was not read the documents out loud and the federal legal requirements regarding lending were not met as they were not gone over line item.

## Consumer Affairs Complaints

116.    Bluegreen engages in a pattern, practice, habit and routine of racketeering through deceptive sales practices, high pressure sales, and exploitation of the elderly.

117.    Bluegreen's sales agents are allowed to continue to use deceptive, high pressure, and misleading sales tactics, and even ones that violate their own internal rules.

118.    Attorneys General across the nation have had hundreds of complaints filed by Bluegreen timeshare owners and consent orders have been lodged against Bluegreen for their practices, and settlements have even been paid out to victims, such as in Pennsylvania in 2010.

119.    There was a class action filed against Bluegreen in 2016 in California for using "hard sell" tactics and misinformation to convince consumers to enter into timeshare contracts, and complaints that Bluegreen regularly engages in the practice of making and advertising false promises and statements with regards to its timeshare contracts that it had no intention of honoring,

120.    Bluegreen's sales agents are allowed to continue to use deceptive, high pressure, and misleading sales tactics, and even ones that violate their own internal rules.

121.    These complaints were filed and Bluegreen was sanctioned, all before the Plaintiff was deceived by the sales people they encountered, because Bluegreen refuses to put a stop to these practices, as they would rather continue making money than clean up their act.

18

122.    According to the Better Business Bureau, their files indicate that Bluegreen Vacations Unlimited has a pattern of complaints concerning misrepresentation in selling practices.

123.    The Better Business Bureau has received 2.49 out of 5 stars based on 108 Customer Reviews, with 94 of those review being negative for Bluegreen Vacations Unlimited, Inc..

124.    Consumer complaints report that the verbal representations are inconsistent with the written agreement. According to the Better Business Bureau, they have received, and continue to receive, a pattern of complaints from consumers alleging:

  a.  Difficulties canceling vacation packages booked through Bluegreen Corporation. Consumers claim, although Bluegreen Corporation has a cancel within 30 days policy, their requests for refunds for canceled trips are denied.

  b.  Deceptive sales practices -- Consumers claim resorts are never available when they contact Bluegreen Corporation.

  c.  The "free" vacation Bluegreen Corporation offers is not free and involve fees they were not made aware of.

  d.  If you book something, you'll often find that what you're trying to book is in "high red" or "ultra high red" seasons. But, you can only use the 5,000 points from THIS year. If you book something in high or ultra high, Bluegreen will take your newest points and leave you with the old points, which can only be used for NON-high red. That means you get leftovers, and you can rarely stay more than 3-4 nights using Bluegreen points.

125.    Plaintiff was the victim of all these deceptive practices. Bluegreen sales agents intentionally misrepresented numerous material terms of the transactions in order to induce the Plaintiff to upgrade, and trade or purchase additional Bluegreen timeshare properties, as stated above.

126.  Bluegreen sales agents would often conceal from or fail to disclose to the Plaintiff certain significant provisions in the timeshare supplemental contracts, including but not limited to the Settlement Statement.

127.  Bluegreen sales agents would often conceal from or fail to disclose to the Plaintiff the Public Offering Statement required under the State's Time-share Act, or force Plaintiff to sign something saying she had received it, knowing that no one could possible review a document that was hundreds of pages long in one sitting or without professional advice about its contents.

128.  Bluegreen sales agents would often conceal from or fail to disclose to the Plaintiff certain significant provisions in the timeshare supplemental contracts, including but not limited to material financing terms such as the interest rate, term of loan, total interest, or total of payments.

129.  Defendants required Plaintiff to sign numerous contracts or documents that internally referred to separate additional documents that were never presented to or signed by Plaintiff.

130.  Plaintiff was strongly encouraged to use Bluegreen's rewards program with a Bluegreen credit card, so that Plaintiff was lured into a false hope that these points would be valuable or offset the high payments she was getting herself into.

131.  On more than one occasion, Bluegreen sales agents failed to properly disclose, or actually lied to the Plaintiff about the statutory rescission or "cooling off period" giving Plaintiff the right to cancel within a certain number of days after the purchase.

### Psychological Tactics

132.  During sales presentations, a team of commissioned sales agents apply pre-scripted psychologically based sales tactics designed to pressure the consumer to purchase (or "upgrade") a timeshare interest, overcoming the consumer's objections that they did not want and/or could not afford to own the pitched product.

20

133.     For example, Plaintiff was told by Bluegreen sales agents that she was getting special discounted pricing to upgrade or purchase additional timeshares and/or timeshare points.

134.     Plaintiff was offered by Bluegreen special reduced pricing and/or unique favorable terms on certain timeshare contracts ("Special Offers"), but then represented that such offers had expired or were no longer available.

135.     Most of the time, Plaintiff was told by Bluegreen agents that certain Special Offers were only valid that day, and that if Plaintiff declined the Special Offer, she would never again be allowed to participate in the Special Offer.

136.     They are often told they are getting a one-time offer, and sometimes the "Manager" would be brought in to the meeting to tell them that this was the best deal they had ever done for anyone.

137.     If they said no to one sales agent, another would be brought in to try different tactics and to continue to work them over into breaking down their resolve, and convincing them to make a purchase they did not want or need.

138.     In addition, Bluegreen sales agents made numerous intentional or negligent misrepresentations to the Plaintiff designed by Bluegreen to create a false sense of urgency, pressuring the Plaintiff to purchase new or additional timeshares. For example, she was told new programs were being introduced but Plaintiff would not be able to use her points unless she enrolled.

139.     Plaintiff was concerned about the high-interest rates on loans, often in the teens, but when she raised such concerns, she was intentionally or negligently told by Bluegreen sales agents that she could take a timeshare deed to her bank, mortgage company, credit union or other financial institution to refinance the loan made by Bluegreen to the Plaintiff at a much lower interest rate. This is a falsehood.

## COUNT I
## (FRAUD - INTENTIONAL MISREPRESENTATION)

### (BVU, BC, VT, BGVC, Nicole)

140. Plaintiff repeats and re-avers the allegations in the foregoing paragraphs as if fully set forth herein.

141. As detailed herein above, Defendant Nicole and Chad Acee made numerous material false representations to the Plaintiff including but not limited to timeshare and timeshare contract terms and conditions, timeshare resale, rental, exchange, and other benefits or provisions of the Bluegreen timeshares purchased by the Plaintiff, and the parties' access, capabilities, maintenance and administration of the Bluegreen timeshares.

142. Plaintiff recalled that the sales agents who made these misrepresentations, Defendant Nicole and Acee, in Tennessee were Bluegreen employees and/or agents, with authority to make the statements, occurring during Bluegreen sales presentations. Bluegreen has all the records of where and when Plaintiff was at the time the sales were made, and who the sales agents were, if there were others.

143. Other falsehoods that Defendants' sales agents, Nicole and Acee told Plaintiff, and upon which statements Plaintiff justifiably relied when deciding to make her purchase are including, but not limited to, the following:

   a. Plaintiff was told by Nicole that she could rent the timeshare out for profit. That was not the case. In addition, she was told that she could rent her points to offset maintenance fees. This was also not the case.

   b. Plaintiff was told by Nicole that the timeshare was a good investment.

   c. She was told by Nicole that she did not need to worry about putting the purchase on a credit card because when she got home she could just refinance with her bank. She found out that was untrue and she could not, and she was stuck with a high interest rate financing her last purchase, which she would not have made had she known the truth that refinancing would not be available to her.

d. Nicole and Acee made out they were going to be the gatekeepers of the account and take care of Plaintiff, even giving out their cell phone numbers in violation of Bluegreen policy. In reality they had NO intention to be the people they promised.

e. Plaintiff was told by both Nicole and Acee she could rent the timeshare out to cover her monthly fees, or even for profit. That was not the case. Sales people told her that she could rent her timeshare for hundreds of dollars per night. This was also not the case.

f. Nicole and Acee both promised her she could do rentals of her timeshare and they would assist her.

g. Nicole and Acee assured Plaintiff they would be her personal representative, telling Plaintiff to call if she ever needed help, and even giving her their personal cell phone number to do so (which then was never answered). Nicole's was given as 608-566-5158. Acee's associate, Mark Pack gave her his cell phone too, 843-424-3626, trying to calm her down and assist her.

h. Defendant Acee told Plaintiff that she did not need to worry about putting charges on a credit card, because when she got home she could just refinance with her home bank. That was untrue. She was also told she could cash in points for maintenance fees at a falsified rate of exchange.

i. Acee told Plaintiff she could save money by putting her purchase and future items on a new Bluegreen Credit Card.

j. Acee told Plaintiff that Bluegreen was running low on points so any time she wanted out she could sell her points for $3.25 a point.

k. Acee told Plaintiff not to tell anyone about these developments and even that he would rent her some of his own personal points.

l. Acee told Plaintiff all she had to do to get all of these perks was to purchase 4,000 more points and not to tell the closing agent any of this would be a financial burden. Instead Acee told Plaintiff to specifically lie to the closing agent by saying "I want more vacation time" because "I do not want to lose my job."

144. Defendants' false representations were intended to provide a measure of security to the Plaintiff that buying points and upgrading was a viable investment.

145. At the time of each sale to Plaintiff, Defendants' agents knew that the representations were false and/or were misleading, in order for Defendants to induce Plaintiff into making purchases.

146. Defendants and their agents engaged in making false statements to induce the Plaintiff to buy, in order to enrich themselves.

147. Acee intentionally hid the fact that he is incentivized in numerous ways to enroll Plaintiff into high interest financing plans such as the Bluegreen Rewards Barclay Card.

148. Defendant Nicole and Acee's knowing misrepresentations have harmed Plaintiff, resulting in financial losses plus mental pain and suffering.

149. Plaintiff was so upset during these high-pressures sales, both in Tennessee and South Carolina, that she had to take a sedative pill to help her stop crying and shaking.

150. Plaintiff was induced to purchase the Bluegreen timeshares at issue as a result of Defendant Nicole and Acee's false and misleading representations.

151. These representations made by Defendant Nicole and Acee were false, and Nicole and Acee knew or should have known they were false when making such misrepresentations.

152. Plaintiff justifiably relied upon Defendant Nicole and Acee's false representations to their detriment.

153. Nicole and Acee made these misrepresentations intentionally, recklessly, and willfully.

154. Nicole and Acee made the misrepresentations in order to induce the Plaintiff to purchase timeshares, upgrades, programs, memberships and points.

155. Nicole and Acee made the misrepresentations in order to gain a financial benefit for themselves as well as Bluegreen.

156. Shortly after the purchase, but not more than three years ago, Plaintiff discovered the full extent of the falsity of these representations and the true intent of the Defendants.

157. Had the Plaintiff been informed of the truth she would never have entered any contract with Bluegreen, she would never have closed the sale, she would never have purchased the time-share interest, and she would absolutely never have paid any purchase funds.

24

158.    Nicole and Acee's actions were of the kind they are employed to perform, as it occurred while they were on the clock and was actuated to serve Bluegreen's interests in selling timeshares, and thus Bluegreen is liable for all actions of Nicole and Acee because of respondeat superior.

159.    Bluegreen has knowingly engaged in a wide-spread, company-wide scheme, through its sales agents, of making false promises, omissions, and high-pressure sales tactics to make sales at all costs, in order to enrich themselves, and they have been sued in court across America, and hundreds of complaints have been filed all across the nation for the exact same allegations Plaintiff is making here.

160.    Plaintiff has suffered damages as a result of the action of Bluegreen, by making the statements set forth herein.

161.    WHEREFORE, premises considered, Plaintiff seeks compensatory and punitive damages plus interest and costs. Plaintiff prays for such other and further relief this Court deems appropriate.

## COUNT II
## (FRAUD - FRAUD IN THE INDUCEMENT)

### (BVU, BC, VT, BGVC, Nicole)

162.    Plaintiff repeats and re-avers the allegations in the foregoing paragraphs as if fully set forth herein.

163.    Defendants' misrepresentations, set forth in Count I above, and all the facts listed in the foregoing paragraphs, induced Plaintiff to purchase the timeshares at issue in this Complaint, all done by Defendants' sales agents Defendant Nicole and Acee.

164.    Defendants' misrepresentations, set forth in Count I above, and throughout this Complaint, induced Plaintiff to purchase the vacation ownership interests at issue in this Complaint.

165.  Defendants' sales agents, Defendant Nicole and Acee, represented to Plaintiff if she bought, that she would be her personal representative, and that she could rent out her timeshare to cover her fees, all of which were untrue.

166.  Bluegreen sales agents, Nicole and Acee, falsely represented to the Plaintiff that the Bluegreen timeshares being purchased by the Plaintiff have sponsorship, approval, characteristics, uses, benefits or quantities that they did not have.

167.  Plaintiff was falsely told by Bluegreen sales agents, Nicole and Acee, that the timeshares purchased would be a great investment.

168.  Plaintiff was falsely told by Bluegreen sales agents, Nicole and Acee, that the timeshares purchased could easily be rented for a profit.

169.  Plaintiff was falsely told by Bluegreen sales agents, Nicole and Acee, that the timeshares purchased could be sold for a profit.

170.  Defendants advertised the timeshares and made timeshare presentations to the Plaintiff with ulterior intents to sell them timeshares contrary to the described timeshares in the advertisements and presentations.

171.  Defendants advertised the timeshares sold to the Plaintiff with intent not to sell them as advertised.

172.  Bluegreen's conduct relating to their sales presentations constituted a "bait and switch" tactic "…advertising items to lure consumer, then inducing the consumers to buy different and more expensive items…" in violation of Tennessee law.  Tenn. Code Ann. § 47-18-103(1).

173.  Defendants' sales agents, Nicole and Acee, made false or misleading statements of fact concerning the reasons for, existence of, or amounts of timeshare price reductions for timeshares being sold to the Plaintiff.

174. Plaintiff was falsely told by Bluegreen's sales agents Nicole and Acee, that one or more timeshares she was being sold were priced well below fair market value.

175. Defendants represented that the timeshares being sold to the Plaintiff had benefits that the Plaintiff did not currently have with her existing timeshare, such as better reservation-making power, the ability to be rented, and that the deal she was getting was a special offer good for that day only.

176. Plaintiff reasonably relied on these misrepresentations to her detriment.

177. Plaintiff has suffered damages as a result.

178. Plaintiff just recently discovered the full extent of the falsity of these representations and the true intent of Bluegreen.

179. Plaintiff's reliance on Nicole and Acee's statements was reasonable under the circumstances.

180. Plaintiff had the right to rely on the statements made by Nicole and Acee.

181. Nicole and Acee's actions were of the kind they are employed to perform, as it occurred while they were on the clock and was actuated to serve Bluegreen's interests in selling timeshares, and thus Bluegreen is liable for all actions of Nicole and Acee because of respondeat superior.

182. As a result of her reasonable reliance, Plaintiff entered into the timeshare contracts with Bluegreen and has been substantially injured as a result.

183. Bluegreen's closing agents had her sign documents saying the opposite of what Plaintiff was told verbally, in order to deceive and confuse her.

184. WHEREFORE, premises considered, Plaintiff seeks compensatory and punitive damages plus interest and costs. Plaintiff prays for such other and further relief this Court deems appropriate.

## COUNT III
## (BREACH OF CONTRACT)

### (BVU, BC, VT, BGVC)

185.     Plaintiff repeats and re-avers the allegations in the foregoing paragraphs as if fully set forth herein.

186.     Plaintiff and Defendants entered into several contracts described above. They are in the possession of the Defendants and Plaintiff does not have copies of the contracts.

187.     Some terms of the contract are incorporated by reference and are not in the possession of Plaintiff, such as the Trust Agreement, and the Public Offering Statement.

188.     These contracts were adhesive in nature, and the Plaintiff was not allowed to negotiate the terms and conditions of these contracts.

189.     Defendants were to provide certain benefits and services, and perform certain obligations under each contract.

190.     Some of the contracts were oral, as enumerated herein. For example, Nicole and Acee promising to be Plaintiff's personal representative, telling her they would help her rent, and that they would answer their cell phones.

191.     These benefits and services are set forth in numerous places, including: a) In the contracts themselves; b) In various ancillary documents and agreements.

192.     Plaintiff performed all of her obligations under the contracts.

193.     Defendants breached said contracts by failing to provide benefits and services, and/or changing or eliminating certain benefits and services.

194.     The Defendants promised to deliver various services to Plaintiff. Incidental to the purchase of the time-share interest was the purchase of the services necessary to utilize the time-share interest-specifically, the booking, reservations, customer service, and support services that would

28

allow the Plaintiff to utilize her interest with Bluegreen, and with Bluegreen affiliates around the world, such as RCI.

195.    However, the Defendants failed to provide the services as they had been described. The Defendants refused to provide clear answers to Plaintiff's basic inquiries about booking and her owner's nights. Despite sales people giving the Plaintiff their alleged cell phone numbers to call for assistance in renting or booking, the Plaintiff had her calls and messages avoided and ignored.

196.    Throughout her ownership, Plaintiff was repeatedly denied reservations when rooms were available, because Bluegreen was renting them on the open market, such as via internet travel sites, and for Bluegreen marketing purposes, instead of making sure they were available to Plaintiff and other similarly situated Bluegreen owners, in order to enrich themselves.

197.    None of the funds Defendants obtained from rental income through the open market or their own marketing purposes, was retained for the benefit of Bluegreen owners, and/or Plaintiff.

198.    By doing so, Bluegreen breached their contracts with Plaintiff because Plaintiff was denied access to the properties and benefits to which we is entitled under the terms of the contract.

199.    Plaintiff was damaged as a result of said breaches.

200.    WHEREFORE, premises considered, Plaintiff seeks compensatory and punitive damages plus interest and costs. Plaintiff prays for such other and further relief this Court deems appropriate.

## COUNT IV
## (NEGLIGENT MISREPRESENTATION)

### (BVU, BC, VT, BGVC, Nicole)

201.    Plaintiff repeats and re-avers the allegations in the foregoing paragraphs as if fully set forth herein.

202.    Bluegreen's employees and agents, Nicole and Acee, acting in the course of their employment or service, and motivated by their pecuniary interest in making a commission from

29

selling the Plaintiff a timeshare, either negligently or recklessly supplied false information to the

Plaintiff as enumerated above on the dates indicated above, as well as the following:

a. Nicole and Acee, on the dates of purchase, stated that they were going to be the Plaintiff's personal representatives, the gatekeepers of the account, and take care of Plaintiff forever. They went as far as to give the Plaintiff their personal cell phone numbers so they could always be in touch. In reality, they had no intention to do this and never contacted the Plaintiff again.

b. Plaintiff was told by Nicole and Acee she could rent the timeshare out for profit. That was not the case. In addition, she was told that she could rent her points to offset maintenance fees. Nicole and Acee told her she could rent her timeshare for hundreds of dollars per night. This was also not the case.

c. Acee intentionally hid the fact that he is incentivized in numerous ways to enroll Plaintiff into high interest financing plans such as the Bluegreen Rewards Barclay Card.

d. Acee told Plaintiff she could save money by putting her purchase and future items on a new Bluegreen Credit Card.

e. Acee told Plaintiff that Bluegreen was running low on points so any time she wanted out she could sell her points for $3.25 a point.

f. Acee told Plaintiff not to tell anyone about these developments and even that he would rent her some of his own personal points.

g. Acee told Plaintiff all she had to do to get all of these perks was to purchase 4,000 more points and not to tell the closing agent any of this would be a financial burden. Instead Acee told Plaintiff to specifically lie to the closing agent by saying "I want more vacation time" because "I do not want to lose my job."

203. Such false information supplied by Bluegreen's sales agents and employees was meant to

guide and/or manipulate the Plaintiff in making a decision to purchase, exchange, trade or upgrade

a Bluegreen timeshare.

204. Bluegreen's sales agents and employees failed to exercise reasonable care in how such

information was obtained, or such information was communicated to the Plaintiff.

205. The Plaintiff was justified in relying on the information being supplied by Bluegreen.

30

206. Defendants had a duty to follow and enforce its internal sales compliance procedures and to act with reasonably prudent care in the administration of Plaintiff's vacation ownership points.

207. Defendants breached this duty by not following and enforcing its internal sales compliance procedures and by making it difficult, if not impossible, for Plaintiff to utilize her points to the fullest extent possible.

208. For example, Defendants' sales agents are not supposed to make representations regarding the ability to rent and rental income that can be obtained, yet Nicole told the Plaintiff that she can rent out her timeshares and make enough money to cover her maintenance fees.

209. Defendants are not supposed to offer "special deals" and say they are good for that day only, or some other special deal, in violation of Tennessee Timeshare Laws, yet Defendants sales agents did just that.

210. Bluegreen knows that it is engaging in deceptive sales tactics, and often the sales agents, told Plaintiff one thing orally, then had her sign a document saying the opposite.

211. The numerous State complaints to Attorneys' General, the Better Business Bureau complaints, and hundreds and/or thousands of lawsuits filed against Bluegreen all alleging the very same misrepresentations that happened to Plaintiff, as well as violations of their own Sales Compliance Manual, and psychological tactics to overcome Plaintiff's ability to say no, prove that Bluegreen knew it was making false representations through its agents.

212. Nicole and Acee's actions were of the kind they are employed to perform, as it occurred while they were on the clock and was actuated to serve Bluegreen's interests in selling timeshares, and thus Bluegreen is liable for all actions of Nicole and Acee because of respondeat superior.

213. As a result of said breaches, Plaintiff suffered damages.

214. WHEREFORE, premises considered, Plaintiff seeks compensatory damages plus interest and costs. Plaintiff prays for such other and further relief this Court deems appropriate.

31

## COUNT V
## (CONSTRUCTIVE FRAUD)

### (BVU, BC, VT, BGVC, Nicole)

215.     Plaintiff repeats and re-avers the allegations in the foregoing paragraphs as if fully set forth herein.

216.     Plaintiff and Defendants entered into several contracts for the purchase of timeshares as described above.

217.     Defendants had a legal and/or equitable duty to Plaintiff to provide accurate and complete information either orally or in written communications, including during sales presentations, in marketing materials used during the podium presentation, marketing materials used during the sales presentation at the tables, or any other documents presented to Plaintiff at any time during their purchase from Defendants, including closing documents.

218.     Defendants, including all their sales agents and Defendant Nicole, owed Plaintiff a duty due to the fiduciary relationship involved in the sale of a timeshare, because a Real Estate agent owes a duty to all parties pursuant to T.C.A. § 62-13-403(4), to provide services to each party to the transaction with honesty and good faith.

219.     In addition to the duties imposed on contracting parties by the express terms of their agreement, the law implies in every contract a duty of good faith and fair dealing.

220.     Plaintiff justifiably placed her trust in Defendants and their agents, including the sales agents named herein, and other yet to be discovered sales agents and employees of Bluegreen who came in contact with Plaintiff during her purchase of a timeshare.

221.     Plaintiff put her trust and confidence in Defendants and their sales agents and other employees and personnel, given their reputations, superior skill in timeshare transactions, knowledge, training, and expertise.

32

222. Defendants further were under a duty to exercise reasonable care to disclose to Plaintiff, before the transactions described herein were consummated, facts basic to the transaction.

223. Defendants, through their sales agents named herein, managing brokers, and other employees knew that the Plaintiff was about to enter into a timeshare purchase due to a mistake, and/or misrepresentation, and/or fraud, and that Plaintiff, because of the relationship between them reasonably expected a disclosure of these facts.

224. Such facts that were not disclosed were:

    a)    The material facts affecting the timeshare's value, known to Defendants but not to Plaintiff, such as the lack of aftermarket value, inability to refinance the timeshare, that "equity" paid in is has no value outside the Bluegreen system, and even then, little to no money would be given for "buy back" of the timeshare, if Bluegreen even chose to exercise its right of first refusal

    b)    That the timeshare was not an investment of any kind

    c)    That the timeshare could not be rented, or would be very difficult to rent, or that the return on rental was much lower than anything stated

    d)    That maintenance fees would increase, or would increase at a higher rate than stated

    e)    That there was no "special offer" or "limited time offer" on the day Plaintiff bought her points, for the price of points offered, on any given purchase Plaintiff was entering into

    f)    That the timeshare was subject to dilution and other rule changes

    g)    That the sales agents were forbidden to give out their cell phone numbers and they would not talk to plaintiff on their cell phone lines, and would not be any sort of "personal representative."

225. These were all basic facts assumed by the parties as a basis for the transaction itself and were an important part of the substance of what was bargained for.

226. Without the benefit of the undisclosed information, said Defendants, and all sales agents, having a legal and/or equitable duty to disclose, Plaintiff reasonably acted to her detriment.

227. Plaintiff would not have purchased the Wyndham timeshares had the undisclosed information been disclosed.

228. Plaintiff has been damaged as a result of the Defendants' undisclosed information.

229. Plaintiff recently discovered, not more than three years ago, after her purchases, these material facts were suppressed and concealed by Defendants.

230. Wherefore, premises considered, Plaintiff seeks compensatory and punitive damages plus interest and costs, as well as such other and further relief as this Court deems appropriate.

## COUNT VI
## (ELDER ABUSE - T.C.A. § 71-6-120)

231. Plaintiff repeats and re-avers the allegations in the foregoing paragraphs as if fully set forth herein.

232. Defendants target the elderly for their deceptive and fraudulent schemes.

233. Defendants usually offer some kind of "incentive" to people to attend a sales presentation.

234. Most elders are on a fixed income, and would not qualify for the usual minimum household income criteria necessary to attend a sales presentation, let alone purchase, and after they purchase a timeshare, they are devastated financially, which often causes great mental anguish.

235. Defendants tell Plaintiff the sales presentation will be "90 minutes" but it almost always goes on for several hours, while Plaintiff is deprived of food. This is especially a harsh sales tactic

as elderly suffer from diabetes, and other health ailments, that make them weak and vulnerable when worn down and hungry.

236.     Often elders are suffering from cognitive decline, making them susceptible to being worn down during hours-long, high-pressure sales jobs, and they are easily confused when signing voluminous amounts of legal paperwork with fine print, especially if they get tired, suffer from sitting for long periods, or get hungry. They are then easy to scam and defraud.

237.     T.C.A. § 71-6-120 provides a right of recovery for elderly persons who are abused or defrauded, who are sixty (60) years of age or older, who have some mental or physical dysfunction, including any resulting from age.

238.     In addition to other remedies provided by law, under this Act, an elderly person has a right of recovery for compensatory damages for abuse or neglect of exploitation, or for theft of their money or property, whether by fraud, deceit, coercion, or otherwise.

239.     Plaintiff Joy Burgess is a sixty-seven (67) year old female and thus is at least 60 or older and was at the time of her purchases, and is therefore considered an elderly person who is protected under this Act.

240.     Defendants deprived the elderly Plaintiff of her money and/or property by:

  A) fraudulently inducing her into buying timeshares, as enumerated above,

  B) fraudulently inducing her into upgrading her timeshares beyond anything Plaintiff could afford or use,

  C) Depriving Plaintiff from her property by constructively preventing Plaintiff from using her timeshares by overselling the resorts, or by Defendants using up available rooms by marketing them and renting them out on the Internet so availability by owners like Plaintiff and other similarly situated owners cannot get reservations

  D) Tricking Plaintiff into timeshare purchases by telling her one thing orally, then slipping documents past her rapidly to sign during closing that say another.

35

241. As such, Defendants have committed violations of this Act, and Plaintiff has suffered damages as a result.

242. Plaintiff was harmed by Defendants' actions as described herein, resulting in damages, for which she seeks compensatory damages, as well as attorneys' fees pursuant to T.C.A. 71-6-120(d).

## COUNT VII
## (NEGLIGENT TRAINING, SUPERVISION AND RETENTION)

### (BVU, BC, BGVC)

243. Plaintiff repeats and re-avers the allegations in the foregoing paragraphs as if fully set forth herein.

244. Bluegreen owed Plaintiff a duty to exercise reasonable care in the training, supervision, and retention of its employees, agents and sales persons.

245. Erik Less supervises the sales center in South Carolina where Plaintiff made her purchase, and Todd Smith and Phillips Hicks supervise and/or manage the sales center in Tennessee, and are responsible for training, supervising and otherwise controlling the content presented by the sales agents.

246. Bluegreen failed to exercise reasonable care in the hiring, selection, training, supervision, and retention of its employees, agents and sales persons because of respondeat superior of the negligence of Less, Hicks, and Smith.

247. Bluegreen knew or should have known sales agents, including Nicole and Acee, were not properly trained, and/or that agents were routinely violating the Tennessee Timeshare Act, and the South Carolina Timeshare Act, making false and misleading statements during sales presentations, and they failed to correct, train, discipline or otherwise put an end to the fraudulent, negligent and deceptive conduct going on.

36

248. For example, both Nicole and Agree gave their cell phone number to Plaintiff, which is in violation of Bluegreen policy, as all calls must be done on Bluegreen telephones so the calls can be recorded. Despite this flagrant violation, Nicole and Agree were not fired.

249. Bluegreen knew, or by the exercise of reasonable care should have known, that the sales people in the Tennessee and South Carolina sales offices were not qualified to perform or continue to perform the work the sales agents were hired for, as prior complaints had been made against them and their sales practices.

250. Upon information and belief, there were so many complaints against Defendant Nicole that she was transferred to Bluegreen's Wisconsin sales center.

251. In addition, Bluegreen owed a duty of reasonable care to the Plaintiff in training and supervising of their officers, employees and agents.

252. Bluegreen failed to exercise reasonable care in the training, supervision, and retention of the Board and/or Officers.

253. Plaintiff did not discover Bluegreen's negligence until less than a year ago, when she hired her current lawyers.

254. As a proximate result of this negligence, Plaintiff suffered damages.

255. Plaintiff is so distraught over her inability to pay for her timeshares, and the enormous amount of debt she was tricked into incurring, that her hair is falling out, she has nightmares about her debt, and is showing other signs of depression and anxiety which were created or exacerbated by these timeshares.

256. WHEREFORE, premises considered, Plaintiff seeks compensatory damages plus interest and costs. Plaintiff prays for such other and further relief this Court deems appropriate.

## COUNT VIII
## (PROMISSORY FRAUD)

### (BVU, BC, BGVC, Nicole)

257.    Plaintiff repeats and re-avers the allegations in the foregoing paragraphs as if fully set forth herein.

258.    Bluegreen's employees and agents, Defendant Kelly Nicole and Chad Acee, intentionally made numerous material misrepresentations to the Plaintiff as enumerated in Counts I and II.

259.    These false representations were made knowingly or without belief in their truth, and/or recklessly without regard to their truth or falsity.

260.    Bluegreen's employees and agents, Nicole and Acee, made promises to the Plaintiff relating to the future value of the Bluegreen timeshares.

261.    Bluegreen's employees and agents, both Nicole and Acee, made promises to the Plaintiff relating to how the Plaintiff could use the Bluegreen timeshares in the future, such as telling her she could rent it out and they would assist her with that, even going so far as giving out their cell phone numbers to her, and falsifying the way the points on her credit card would help her pay for her timeshare.

262.    Bluegreen's employees and agents, Nicole and Acee, made promises to the Plaintiff relating to Bluegreen helping the Plaintiff rent out her Bluegreen timeshares in the future, as well as telling her she could rent to cover maintenance fees or cover the cost of ownership. However, no Bluegreen agent ever answered their phone or assisted the Plaintiff in renting out her timeshare.

263.    Bluegreen's employees and agents, Nicole and Acee, made promises relating to Bluegreen exchanging the Plaintiff's timeshares and/or timeshare points in the future for vacations, time or use of or at other resorts.

264.    Bluegreen's employees and agents, Nicole and Acee, made specific and unambiguous promises relating to the advantages of upgrading a timeshare and/or purchasing additional points, and claiming maintenance fees would be covered if Plaintiff rented out her timeshare.

265.    The Plaintiff reasonably relied on Bluegreen's employees and agents, Nicole and Acee's, misrepresentations to her detriment.

266.    At all times Bluegreen's employees and agents, Nicole and Acee, represented themselves as experts in the field of timeshares, and advised the Plaintiff that she should rely on the representations of the Bluegreen employees and agents in making Plaintiff' decisions to purchase, upgrade, modify, trade and/or sell their timeshares.

267.    Bluegreen's misrepresentations related to promises of future action without the present intention to carry out such promises.

268.    As a proximate result, Plaintiff has suffered damages.

269.    WHEREFORE, premises considered, Plaintiff seeks compensatory damages plus interest and costs. Plaintiff prays for such other and further relief this Court deems appropriate.

## COUNT IX
## VIOLATION OF THE TENNESSEE TIMESHARE ACT

### (BVU, BC, BGVC, Nicole)

270.    Plaintiff repeats and re-avers the allegations in the foregoing paragraphs as if fully set forth herein.

271.    Tennessee law, specifically Title 66, Chapter 32 of the Tennessee Time-Share Act of 1981 ("Timeshare Act") governs timeshare sales in the State of Tennessee. Tenn. Code Ann. § 66-32-112.

272.    Plaintiff was sitting in Sevier County, Tennessee, when she purchased her contract #858348.

273.    Bluegreen violated Tenn. Code Ann. § 66-32-132 of the Timeshare Act entitled Advertising Specific Prohibitions.

274.    Section 66-32-132 of the Timeshare Act states that:

No advertising for the offer or sale of time-share intervals shall:

(1) Contain any representation as to the availability of a resale program or rental program offered by or on behalf of the developer or its affiliate unless the resale program and/or rental program has been made a part of the offering and submitted to the commission;

(2) Contain an offer or inducement to purchase which purports to be limited as to quantity or restricted as to time unless the numerical quantity and/or time applicable to the offer or inducement is clearly and conspicuously disclosed;

(3) Contain any statement concerning the investment merit or profit potential of the time-share interval unless the commission has determined from evidence submitted on behalf of the developer that the representation is neither false nor misleading;

(4) Make a prediction of or imply specific or immediate increases in the price or value of the time-share intervals; nor shall a price increase of a time-share interval be announced more than sixty (60) days prior to the date that the increase will be placed into effect;

(5) Contain statements concerning the availability of time-share intervals at a particular minimum price if the number of time-share intervals available at that price comprises less than ten percent (10%) of the unsold inventory of the developer, unless the number of time-share intervals then for sale at the minimum price is set forth in the advertisement;

(6) Contain any statement that the time-share interval being offered for sale can be further divided unless a full disclosure is included as to the legal requirements for further division of the time-share interval;

(7) Contain any asterisk or other reference symbol as a means of contradicting or changing the ordinary meaning of any previously made statement in the advertisement;

40

(8) Misrepresent the size, nature, extent, qualities, or characteristics of the accommodations or facilities which comprise the time-share project;

(9) Misrepresent the nature or extent of any services incident to the time-share project;

(10) Misrepresent or imply that a facility or service is available for the exclusive use of purchasers or owners if a public right of access or of use of the facility or service exists;

(11) Make any misleading or deceptive representation with respect to the contents of the time-share program, the purchase contract, the purchaser's rights, privileges, benefits or obligations under the purchase contract or this part;

(12) Misrepresent the conditions under which a purchaser or owner may participate in an exchange program; or

(13) Describe any proposed or uncompleted private facilities over which the developer has no control unless the estimated date of completion is set forth and evidence has been presented to the commission that the completion and operation of the facilities are reasonably assured within the time represented in the advertisement.

Tenn. Code Ann. § 66-32-132.

275.   Bluegreen, its agents and employees, including sales agent Defendant Nicole as well as its managers, due to their failure to properly supervise and train, violated Section 66-32-132 of the Timeshare Act by advertising and marketing the Bluegreen timeshares to the Plaintiff in such ways that omitted material information and/or made fraudulent, deceptive, misleading statements or representations, including but not limited to the following:

    a.   Made representations that the timeshares offered to the Plaintiff were limited as to quantity or restricted as to time without the numerical quantity and/or time applicable to the offer being conspicuously disclosed;

    b.   Made representations to the Plaintiff concerning the investment merit or profit potential of the timeshares without the commission determining that the representation is neither false nor misleading;

    c.   Made predictions of and/or implied specific and/or immediate increases in the price or value of the timeshares being sold to the Plaintiff;

    d.   Made statements concerning the availability of the timeshares being sold to the Plaintiff at a particular price without properly disclosing the number of such timeshares then for sale at the price being disclosed or set forth to the Plaintiff;

e. Misrepresented the size, nature, extent, qualities, or characteristics of the accommodations or facilities which comprise the timeshares being purchased by the Plaintiff;

f. Misrepresented to the Plaintiff the nature or extent of any services incident to the timeshares purchased by the Plaintiff, including but not limited to rental, advisory, exchange and resell services;

g. Misrepresented to the Plaintiff that certain facilities and/or services available to the Plaintiff was for their exclusive use;

h. Made misleading and/or deceptive representations to the Plaintiff with respect to the contents of the timeshares and/or timeshare programs being sold to the Plaintiff, as well as misleading and/or deceptive representations regarding the purchase contract and the purchasers' rights, privileges, benefits or obligations under the Plaintiff' timeshare contracts;

i. Misrepresentations to the Plaintiff regarding the conditions under which the Plaintiff may participate in one or more exchange, rental or resell programs;

276. For example, Defendants violated section h by failing to either properly disclose or get Plaintiff assent that the contract was of perpetual duration.

277. Defendants violated section b by Nicole telling Plaintiff the timeshare purchase was a good investment.

278. Defendants continually breach section e as Plaintiff is unable to get reservations because there is little to no availability.

279. Defendants, including Defendant Nicole, violated section f by telling Plaintiff she could rent her timeshare, and/or would assist with Plaintiff's timeshare rental.

280. Defendants, including Defendant Nicole, failed to disclose that Bluegreen timeshares are available for rent on the internet, violating section g.

281. Nicole's actions were of the kind she is employed to perform, as it occurred while she was on the clock and was actuated to serve Bluegreen's interests in selling timeshares, and thus Bluegreen is liable for all actions of Nicole because of *respondeat superior*.

282. Bluegreen violated Tenn. Code Ann. § 66-32-131 of the Timeshare Act entitled Misleading advertising unlawful.

42

283.    As a proximate result, the Plaintiff has suffered damages.

284.    The Tennessee Timeshare Act provides that:

(a) If a developer or any other person subject to this part violates any provision thereof or any provision of the project instruments, any person or class of persons adversely affected by the violation has a claim for appropriate relief. Punitive damages may be awarded for a willful violation of this part. The court may also award reasonable attorney's fees.
(b) Except as provided in subsection (c), any developer or any other person subject to this part who offers or disposes of a time-share interval without having complied with this part or who violates any provision of this part commits a Class C misdemeanor.
(c) Any developer or any other person subject to this part who knowingly, willfully and intentionally offers, disposes of, or jeopardizes the interest of the purchaser of a time-share interval in violation of § 66-32-113, § 66-32-122(a) or § 66-32-128 commits a felony punishable by a fine not exceeding five thousand dollars ($5,000) or by imprisonment for not less than one (1) year nor more than three (3) years, or by both such fine and imprisonment.
(d) Nothing in this part limits the power of the state to punish any person for any conduct or omission which constitutes a violation under any other provision of this code.

Tenn. Code Ann. § 66-32-188.

285.    WHEREFORE, the Plaintiff seeks compensatory and punitive damages plus interest and

costs. Plaintiff prays for such other and further relief this Court deems appropriate.

## COUNT X
## VIOLATION OF SOUTH CAROLINA TIMESHARE ACT

**(BVU, BC, BGVC)**

286.    Plaintiff repeats and re-avers the allegations in the foregoing paragraphs as if fully set forth

herein.

287.    Plaintiff purchased her last timeshare, contract #888518, while in Myrtle Beach, South

Carolina on March 12, 2015.

288.    South Carolina law, specifically Title 27, Chapter 32 governs timeshare sales in the State

of South Carolina.

289. Defendants violated Section 27-32-410 entitled: **Timeshare closing; time; representation; notice to purchaser; contents**, by failing to provide the Plaintiff with the following notice:

(A) The timeshare closing is hereby considered to occur after the last of the following events: (i) the deed and other applicable instruments are submitted for recordation, (ii) six months after the execution of an installment sales contract, if applicable, or (iii) the closing date specified in the executed documents. The documents conveying rights and interests in timeshare real property must not be presented to a timeshare purchaser before the closing of an interest in a vacation time sharing plan in this State unless the form of the document is prepared under the supervision of an attorney licensed in this State who is not an employee of the seller of the timeshare interest. An attorney licensed in this State who is not an employee of the seller of the timeshare interest shall supervise the timeshare closing of a sale of an interest in a vacation time sharing plan located in this State by: (i) supervising the examination of title to the interest, (ii) physically reviewing before closing the executed transaction documents including, but not limited to, the following, as applicable: the deed, installment sales contract, mortgage, and promissory note, and (iii) supervising the recording of all instruments involved in the timeshare closing.

(B) Notwithstanding any other provision of law, the documents conveying rights and interests in timeshare real property must be accompanied by a conspicuous notice delivered to the purchaser at or before the time of the execution of the purchase contract for an interest in a vacation time sharing plan, which notice may be included in the purchase contract or in a separate document, substantially in the following form and in conspicuous type (meaning bold type in upper and lower case letters [but in no event in all upper case letters] two point sizes larger than the largest nonconspicuous type, exclusive of headings, on the page on which it appears but in at least 10-point type):

"The South Carolina licensed attorney under whose supervision the form of the transaction documents were reviewed and prepared on behalf of seller is: [insert name, address, and telephone number]. Before the closing, you will review, approve, and sign important documents. What those documents say is important to you. They can affect any rights you might have. They can affect what you will have to do during this transaction. South Carolina's Vacation and Time Sharing Act gives you that right. You have an absolute right to consult an attorney of your choosing, at your own expense, if you have any questions or concerns about this purchase or about what those documents say. If you choose to have an attorney represent you, you must notify seller of the name of that attorney.

You have five days to cancel this contract. The details of your cancellation rights are provided for in your purchase contract.

You have the ability to waive your right to have an attorney represent you in all phases of this transaction. You can withdraw this waiver at any time prior to

closing and indicate to the seller that you are withdrawing your waiver and provide the name of the attorney representing you. Your waiver must be in writing. You may indicate your waiver by signing the statement below:

I/We having been provided this notice of my/our right to have an independent South Carolina attorney represent me/us during all aspects of this transaction, knowingly and voluntarily waive such right this day of , 20 ."

(C) By providing the disclosure set forth above, the transaction is exempt from the requirements of Section 37-10-102.

(D) The provisions of this section apply only to the purchase and sale of an interest in a vacation time sharing plan and the timeshare closing related to it.

 SC Code § 27-32-410 (2013).

290.    Defendants further violated section 27-32-110(3) which prohibits practices that misrepresent the amount of time or period of time the accommodations or facilities are available to the purchaser, as Plaintiff was unable to get reservations and were not told it would have to be a year in advance.

291.    Defendants further violated section 27-32-110(7) and (8) which state (7) timeshare sellers shall not make misleading or deceptive representations with respect to the contents of the contract or the purchaser's rights, privileges, or benefits under it; or (8) fail to honor and comply with all provisions of the contract with the purchaser.

292.    Plaintiff recently discovered, not less than three years ago, that the South Carolina Timeshare Law had been violated.

293.    Wherefore, Plaintiff asks this court to declare the contract voidable and grant a refund of all consideration paid pursuant to the contract in accordance with 27-32-120(C).

294.    WHEREFORE, the Plaintiff seeks compensatory and punitive damages plus interest and costs. Plaintiff prays for such other and further relief this Court deems appropriate.

## COUNT XI
## (CONVERSION)

### (BVU, BC, BGVC, VT)

295.    Plaintiff repeats and re-avers the allegations in the foregoing paragraphs as if fully set forth herein.

296.    Plaintiff further avers that Defendants converted Plaintiff's property, as they have a routine practice of renting resort rooms/reservations to the general public, and collecting and retaining the funds and compensation from such rental, all the while denying Plaintiff the availability to the rooms and reservations which she purchased, and Plaintiff pays to maintain.

297.    The rental income is kept as the sole property of the Defendants and is not used in any way to compensate the Plaintiff, and other similarly situated timeshare owners, for the loss of use and enjoyment of their timeshare properties.

298.    The retention of these funds by the Defendants constitutes conversion as the Defendants have acted in defiance of the Plaintiff's property rights.

299.    Vacation Trust, Inc. is allowing this violation of the rights of Plaintiff and other Bluegreen owners to occur.

300.    This practice is an ongoing occurrence by the Defendants and thus, is an ongoing conversion of the Plaintiff's timeshare assets, as well as other similarly situated timeshare owners.

301.    Moreover, Plaintiff just discovered, less than a year ago, that Defendants were converting her property for their own use by keeping rental income and renting out the rooms to the general public and depriving her of her use rights and preventing her from being able to get reservations.

## COUNT XII
## (INJUNCTIVE RELIEF)

302.    The Plaintiff repeats and re-avers the allegations in the foregoing paragraphs as if fully set forth herein.

46

303.    The timeshare contracts between the parties are perpetual contracts, which the Plaintiff did not intend.

304.    Tennessee law holds that in the absence of an explicit agreement as to date of termination, the contract is terminable at will by either party.

305.    Plaintiff would request that the Court hold that the contracts at issue in this Complaint are of an indefinite duration and order that the contracts be declared void *ab initio*.

306.    There is no way to calculate damages for a perpetual contract, as the payments are without end. Therefore, injunctive relief is required to end these contracts between the parties.

307.     The Defendants claim that the Plaintiff is obligated to pay maintenance fees associated with the Plaintiff's timeshare contracts.

308.    The Plaintiff is suffering ongoing harm by having to service debt related to the timeshare purchases.

309.    The validity of the Plaintiff's timeshare contracts is in dispute at this time.

310.    If the Plaintiff is required to pay additional funds to the Defendants at this time, she has and will suffer further irreparable and needless harm, such as inability to pay other financial obligations, and harm to her credit.

311.    The Plaintiff will be irreparably harmed should the Defendants be allowed to make disparaging remarks about her credit.

WHEREFORE, the Plaintiff requests an injunction against the Defendants barring the Defendants from collecting or acting in any way to collect further fees, costs, or expenses from the Plaintiff until such time as this matter is fully adjudicated.

WHEREFORE, the Plaintiff requests an injunction barring Defendants from continuing to violate the Tennessee Timeshare Act and South Carolina Timeshare Act.

WHEREFORE, Plaintiff further requests that the court declare the contracts void and return all money paid by Plaintiff.

## PREMISES CONSIDERED, PLAINTIFF PRAYS:

1.  That process issue and the Defendants be required to respond in accordance with the "Tennessee Rules of Civil Procedure" ;

2.  That the Plaintiff be awarded compensatory damages and punitive or treble damages in an amount of $500,000;

3.  For attorneys' fees as provided for under the Tennessee Timeshare Act;

4.  That all discretionary costs be awarded to the Plaintiff;

5.  That the costs of this cause be taxed to the Defendants; and

6.  For such other and general relief the Court deems just and proper.

Respectfully submitted,

 /s/ Kristin Mosher
Aubrey Givens (BPR No. 21491)
Kristin Fecteau Mosher (BPR No. 19772)
Aubrey Givens & Associates, PLLC
231 W. Old Hickory Blvd.
Suite B, Second Floor
Madison, TN 37115
(615) 248-8600
contactus@givenslawfirm.com
kristin@fecteaulaw.com
Attorneys for Plaintiffs

This is Plaintiff's First Application for Extraordinary Relief.

48

**Certificate of Service**

I hereby certify that on this 3rd day of May, a true and correct copy of Plaintiffs' Amended Complaint has been served via the CM/ECF system, addressed to:

Patricia Head Moskal (pmoskal@bradley.com)
R. Brandon Bundren (bbundren@bradley.com)
BRADLEY ARANT BOULT CUMMINGS, LLP
1600 Division St., Suite 700
Nashville TN 37203

       /s/ Kristin Mosher
Kristin Fecteau Mosher