UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

JOY BURGESS,                              )
                                          )
          Plaintiff,                      )
                                          )
v.                                        )   No. 3:18-CV-119-HSM-DCP
                                          )
BLUEGREEN VACATIONS UNLIMITED,            )
INC., et al.,                             )
                                          )
          Defendants.                     )

# MEMORANDUM AND ORDER

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and Standing Order 13-02.

Now before the Court is Plaintiff's Motion to Consolidate [Doc. 7] and Defendants' Motion to Modify or Clarify Order [Doc. 8]. The Motions are ripe for adjudication. Accordingly, for the reasons set forth below, the Court **DENIES** both Motions [**Docs. 7 and 8**].

## I.  BACKGROUND

As an initial matter, the Court observes that both Motions relate to another case filed in this Court, *Noblitt v. Bluegreen Vacations Unlimited, Inc.,* No. 3:18-CV-117. Plaintiff's Motion [Doc. 7] requests that the instant case be consolidated with *Noblitt*. Defendants' Motion seeks clarification or modification of the undersigned's Order determining that the two cases are related. *See Burgess v. Bluegreen Vacations Unlimited Inc.*, 3:18-CV-119 [Doc. 4]. The Court finds that in analyzing both Motions, it will be helpful to begin with the allegations set forth in both Complaints.

## A.     Noblitt v. Bluegreen Vacations Unlimited, Inc., No. 3:18-CV-117

Plaintiffs in *Noblitt* filed their action in Chancery Court for Sevier County, Tennessee, on February 1, 2018. [Doc. 1-1 at 1]. Defendants removed the Complaint to this Court on March 21, 2018, and Plaintiffs filed an Amended Complaint [Doc. 9] on April 18, 2018. Plaintiffs filed their Amended Complaint against Bluegreen Vacations Unlimited Inc.; Bluegreen Corporation, Vacation Trust, Inc.; Bluegreen Vacation Club, Inc. (collectively, "Bluegreen"); and Kelly Nicole.

The Amended Complaint alleges that Plaintiffs own Bluegreen points and/or timeshares that they purchased for timeshares located in Myrtle Beach, South Carolina. [Doc. 9 at ¶¶ 2-3]. Plaintiffs allege that they attended a timeshare presentation in Sevierville, Tennessee, in February 2014 and that they purchased the timeshares while they were in Sevierville. [*Id.* at ¶ 3]. Plaintiffs state that after they became owners, they were required to attend an owner update meeting, which served no purpose other than to manipulate and pressure owners to buy additional timeshare points. [*Id.* at ¶ 14]. Plaintiffs aver that such pressure often confused them, causing them to misunderstand what they were purchasing, what they were trading, and the actual terms and conditions of the purchase. [*Id.* at ¶ 15].

Plaintiffs allege that they attended a sales presentation in February 2014, which lasted eight (8) hours. [*Id.* at ¶ 17]. Plaintiffs continue that Bluegreen and its agents made material false statements upon which Plaintiffs relied when deciding to purchase timeshares and that Bluegreen mislead them into buying additional and largely worthless timeshare points without actually offering anything of value in return. [*Id.* at ¶ 18]. Plaintiffs state that Bluegreen engaged in a variety of deceptive sales tactics and that such tactics are part of its corporate philosophy. [*Id.* at ¶ 19]. Plaintiffs explain that Defendants sell timeshares based on a points system, rather than a

traditional fixed week or deed, and there is no limit to the amount of inventory sold in a points system. [*Id.* at ¶¶ 22-23].

Plaintiffs aver that in order to entice current owners to purchase more timeshares, Bluegreen created the "Rental Pitch" as a tactic to lure owners. [*Id.* at ¶ 25]. Plaintiffs explain that Bluegreen's sales agents stated that the timeshare would greatly increase the amount of rental income Plaintiffs would receive and that the timeshare would pay for itself, including maintenance fees. [*Id.* at ¶¶ 26-27]. Plaintiffs allege that sales persons told them and similarly situated timeshare owners that they could rent their timeshare for $300.00 to $500.00 per night. [*Id.* at ¶ 27]. Plaintiffs claim that Bluegreen deliberately restricts the quantity and quality of the inventory available to rent so that timeshare owners do not receive a big price on their rental. [*Id.* at ¶ 29]. In addition, Bluegreen did not tell Plaintiffs that they would be competing with sites like Orbitz, Hotels.com, and Hotwire. [*Id.* at ¶ 30]. Plaintiffs state that the "Rental Pitch" violates the Tennessee Timeshare Act. [*Id.* at ¶ 31].

Plaintiffs allege that it is the common practice and scheme of Defendants to purposely make misrepresentations during the sales presentation. [*Id.* at ¶ 33]. Plaintiffs claim that in order to limit liability, during the closing process, Defendants attempt to obtain Plaintiffs' signatures disavowing that such fraudulent statements were made by the sales agents. [*Id.* at ¶¶ 33-34]. Plaintiffs allege that each Bluegreen timeshare contract closing required Plaintiffs to sign or initial numerous separate contracts or other documents, often numbering into thirty (30) separate agreements and/or documents, with some numbering over seven hundred (700) pages. [*Id.* at ¶ 37]. Plaintiffs state that Bluegreen required them to sign numerous contracts that internally required separate additional documents that were never presented or signed by Plaintiffs or were hundreds of pages long and could not possibly be reviewed in one sitting. [*Id.* at ¶ 38]. Plaintiffs

allege that they often signed Bluegreen timeshare contracts without being given an opportunity to read them because of being tired, hungry, pressured, harassed, and/or bullied into signing. [*Id.* at ¶ 40]. Plaintiffs allege that specifically, in February 2014, Defendant Kelly Nicole, represented that the timeshares would increase in value. [*Id.* at ¶ 43].

Plaintiffs state that Bluegreen engages in a pattern, practice, habit, and routine of racketeering through deceptive sales practices, high pressure sales, and exploitation of the elderly. [*Id.* at ¶ 46]. Plaintiffs allege that a number of actions have been filed against Bluegreen by timeshare owners over such practices. [*Id.* at ¶¶ 47-48]. Plaintiffs state that they are victims of these deceptive practices and Defendant Nicole intentionally misrepresented numerous material terms of the transactions in order to induce Plaintiffs to upgrade, trade, or purchase additional timeshare properties. [*Id.* at ¶ 54].

Plaintiffs claim that during sales presentations, a team of commissioned sales agents apply pre-scripted psychologically based sales tactics designed to pressure the consumer to purchase (or upgrade) a timeshare interest, overcoming the consumer's objections. [*Id.* at ¶ 61]. Plaintiffs state that, for example, they were told by Defendant Nicole that they were getting special discounted pricing to upgrade, but later, Defendants represented such offers had expired or were no longer available. [*Id.* at ¶¶ 62-64]. Plaintiffs state that the sales agents, including Defendant Nicole, made numerous intentional or negligent misrepresentations to Plaintiffs designed by Bluegreen to create a false sense of urgency, pressuring Plaintiffs to purchase new or additional timeshares. [*Id.* at ¶ 67].

Plaintiffs allege that they purchased timeshares and/or points from Defendants on several occasions and that they became members in 2008. [*Id.* at ¶¶ 69-70]. They allege to have paid Defendants approximately $40,000.00 in mortgage payments and maintenance fees. [*Id.* at ¶ 71].

Plaintiffs state that Defendants' sales processes over the years and in different states were nearly identical—that is, sales representatives applied high pressure sales techniques and verbal misrepresentations for hours and then another agent of Defendants would pressure Plaintiffs into signing a stack of legal documents quickly without reading them or consulting counsel. [*Id.* at ¶ 86]. Plaintiffs allege the following claims: (1) constructive fraud, (2) fraud—intentional misrepresentation, (3) breach of contract, (4) promissory fraud, (5) violation of the Tennessee Timeshare Act, and (6) violation of the South Carolina Timeshare Act. [*Id.* at 19-33]. In addition, Plaintiffs request injunctive relief.

B.  **Burgess v. Bluegreen Vacations Unlimited, Inc., No. 3:18-CV-119**

Plaintiff in *Burgess* filed her action in Chancery Court for Sevier County, Tennessee, on March 2, 2018. [Doc. 1-1 at 1]. Defendants removed the Complaint to this Court on March 21, 2018, and Plaintiff filed a First Amended Complaint [Doc. 13] on May 3, 2018. Plaintiff filed her Amended Complaint against Bluegreen and Defendant Nicole.

Plaintiff alleges that she purchased Bluegreen points and timeshares totaling $100,000.00. [Doc. 13 at ¶ 2]. She purchased a Bluegreen timeshare while in Sevierville, Tennessee, on approximately September 9, 2014, and she also purchased a Bluegreen timeshare in Myrtle Beach, South Carolina, on or around March 12, 2015. [*Id.* at ¶¶ 3-4].

Plaintiff claims that all persons who own Bluegreen timeshares receive a symbolic point allocation based upon their ownership interest and that membership points are renewed annually or biennially for the alternate year ownership. [*Id.* at ¶¶ 23-24]. Plaintiff alleges that Bluegreen does not disclose that the timeshare points are an unliquidated asset with no aftermarket, making it impossible for Plaintiff or other owners to resell their Bluegreen timeshares. [*Id.* at ¶ 29].

Plaintiff alleges that on September 9, 2014, she was told to attend a mandatory forty-five (45) minute owners' update meeting, which was really a multiple hour high-pressure sales presentation. [*Id.* at ¶ 55]. Defendant Nicole convinced Plaintiff to purchase a timeshare for approximately $13,500.00. [*Id.* at ¶ 57]. Defendant Nicole told Plaintiff that there were changes to the program and that if Plaintiff purchased 4,000 more points, Plaintiff would be able to take advantage of these changes. [*Id.* at ¶ 60]. Further, Defendant Nicole told Plaintiff that she would help Plaintiff rent the points out and then sell them to make a profit. [*Id.* at ¶ 61]. Defendant Nicole told Plaintiff to tell the closing agent that the purchase would not create any financial stress or burden, when in reality, it was a great burden on Plaintiff. [*Id.* at ¶ 62].

Plaintiff continues that with respect to her purchase in Myrtle Beach, South Carolina, on March 12, 2015, she was told to attend a forty-five (45) minute owners' update meeting, which was really a multiple hour high-pressure sales presentation. [*Id.* at ¶ 65]. At this meeting, Plaintiff encountered Bluegreen employees, Chad Acee, a sales representative, and Manager Erik Less. [*Id.* at ¶ 66]. Acee stated that he was there to help Plaintiff and that Plaintiff could save money by putting her purchase and future items on a new Bluegreen credit card. [*Id.* at ¶¶ 68. 71]. Acee told Plaintiff that she could sell her points for $3.25 per point and that all she had to do was to purchase 4,000 more points and not tell the closing agent that such a purchase would be a financial burden. [*Id.* at ¶¶ 72, 74].

Plaintiff alleges that Bluegreen timeshare owners are coerced, forced, and/or required to attend owner updates or other meetings that are intended for no purpose other than to manipulate and pressure the owners to buy additional timeshare points. [*Id.* at ¶ 78]. Plaintiff states that such high pressure by Bluegreen often confused her and caused her to misunderstand what she was purchasing, what was traded, and the actual terms and conditions of the purchase. [*Id.* at ¶ 79].

6

Plaintiff states that Bluegreen and its agents made material false statements upon which Plaintiff relied on when deciding to purchase Bluegreen timeshares and that Bluegreen mislead her into buying additional and largely worthless timeshare points without actually offering anything of value in return. [*Id.* at ¶ 82]. Plaintiff states that Bluegreen engaged in a variety of sales tactics, which are used companywide with the knowledge, endorsement, and encouragement of senior management. [*Id.* at ¶ 83]. Plaintiff states that such deceptive tactics are part of Bluegreen's corporate philosophy. [*Id.* at ¶ 84]. Plaintiff explains that Defendants sell timeshares based on a points system, rather than a traditional fixed week or deed, and there is no limit to the amount of inventory sold in a points system. [*Id.* at ¶¶ 86-87].

Plaintiff states that one of the most common and ongoing problems with the timeshares is the unavailability when trying to make reservations. [*Id.* at ¶ 89]. Plaintiff states that when dates for the resorts are unavailable on the Bluegreen reservation system, the same dates and resorts show availability on various travel websites. [*Id.* at ¶ 90]. Plaintiff alleges that Bluegreen controls all aspects of the reservation system. [*Id.* at ¶ 94].

Plaintiff avers that in order to entice current owners to purchase more timeshares, Bluegreen created the "Rental Pitch" as a tactic to lure owners. [*Id.* at ¶ 96]. Plaintiff explains that sales agents stated that the timeshare would greatly increase the amount of rental income Plaintiff would receive and that the timeshare would pay for itself, including maintenance fees. [*Id.* at ¶ 97]. Bluegreen also told Plaintiff that she would not be competing with sites like Orbitz, Hotels.com, and Hotwire. [*Id.* at ¶ 99]. Plaintiff states that Bluegreen has a policy against the "Rental Pitch" because it is inherently misleading, gives false assurances, is a high-pressure sales tactic that lures people into buying more than they can afford, and is a violation of timeshare laws in many states. [*Id.* at ¶ 100].

Plaintiff alleges that it is the common practice and scheme of Defendants to purposely make misrepresentations during the sales presentation. [*Id.* at ¶ 102]. In order to limit liability, during the closing process, Defendants attempt to obtain Plaintiff's signature disavowing that such fraudulent statements were made by the sales agents. [*Id.* at ¶¶ 102-03]. Plaintiff avers that each Bluegreen timeshare contract closing required her to sign or initial numerous separate contracts or other documents, often numbering into thirty (30) separate agreements and/or documents, with some numbering over seven hundred (700) pages. [*Id.* at ¶ 106]. Plaintiff states that Bluegreen required her to sign numerous contracts that internally required separate additional documents that were never presented or signed by Plaintiff or were hundreds of pages long and could not possibly be reviewed in one sitting. [*Id.* at ¶ 107]. Plaintiff alleges that she often signed Bluegreen timeshare contracts without being given an opportunity to read them because of being tired, hungry, pressured, harassed, and/or bullied into signing. [*Id.* at ¶ 110].

Plaintiff states that Bluegreen engages in a pattern, practice, habit, and routine of racketeering through deceptive sales practices, high pressure sales, and exploitation of the elderly. [*Id.* at ¶ 116]. Plaintiff alleges that a number of actions have been filed against Bluegreen by timeshare owners over such practices. [*Id.* at ¶¶ 118-19]. Plaintiff states that she is a victim of these deceptive practices and that sales representatives intentionally misrepresented numerous material terms of the transactions in order to induce Plaintiff to upgrade, trade, or purchase additional timeshare properties. [*Id.* at ¶ 125].

Finally, Plaintiff alleges that during sales presentations, a team of commissioned sales agents apply pre-scripted psychologically based sales tactics designed to pressure the consumer to purchase (or upgrade) a timeshare interest, overcoming the consumer's objections. [*Id.* at ¶ 132]. Plaintiff avers that, for example, she was told by Defendant Nicole that she was getting special

discounted pricing to upgrade, but later, Defendants represented such offers had expired or were no longer available. [*Id.* at ¶¶ 133-34]. Plaintiff states that the sales agents made numerous intentional or negligent misrepresentations to her, which were designed by Bluegreen to create a false sense of urgency, pressuring Plaintiff to purchase new or additional timeshares. [*Id.* at ¶ 138].

Plaintiff alleges the following claims: (1) fraud—intentional misrepresentation, (2) fraud in the inducement, (3) breach of contract, (4) negligent misrepresentation, (5) constructive fraud, (6) elder abuse under Tennessee Code Annotated § 71-6-120, (7) negligent hiring, training, supervision, and retention, (8) promissory fraud, (9) violation of the Tennessee Timeshare Act, (10) violation of the South Carolina Timeshare Act, and (11) conversion. [*Id.* at 22-46]. In addition, Plaintiff seeks injunctive relief. [*Id.* at 46-48].

## II.  POSITIONS OF THE PARTIES

The Court will summarize the Motions in the order in which they were filed.

### A.  Plaintiff's Motion to Consolidate

Plaintiff requests that the instant lawsuit be consolidated with *Noblitt* for case management, discovery, and pre-trial purposes because the lawsuits involve common questions of law and fact. Plaintiff cites to Tennessee case law, explaining that state case law is appropriate because Tennessee Rule of Civil Procedure 20.01 mirrors the Federal Rule. Plaintiff asserts that federal courts have crafted a distinction between multiple claims constituting one cause of action and those that are factually distinct enough to support a separate cause of action. Plaintiff submits that such distinction allows factually interrelated claims to be considered as a single cause of action as long as venue is proper. Plaintiff states that the phrase "transaction or occurrence" is given a broad and liberal interpretation in order to avoid a multiplicity of suits. Plaintiff continues that other federal

9

courts have reached the same result using a theory of "pendant venue," which is analogous to the pendent jurisdiction doctrine. Plaintiff maintains that venue only needs to be satisfied for the original cause of action. Plaintiff submits that the Court has already determined that both cases "arise out of the same transaction or occurrence and involve one or more of the same parties." Plaintiffs state that Tennessee Rule of Civil Procedure 23.02 controls whether numerous parties can be joined in a class action. Plaintiff submits that while the instant case is not a class action, Rule 23.02 provides the Court guidance with respect to consolidating cases. Plaintiff continues that the purpose of Federal Rule of Civil Procedure 20 is to promote efficiency. Plaintiff explains that here, there are minor variations in what each Plaintiff was told at the sales presentation but that all Plaintiffs' claims overlap with respect to the misleading, negligent, and intentional misrepresentations that were made to them by the sales agents in the same resort by the same sales lady. Plaintiff continues that Bluegreen knew the sales agents were violating the Tennessee Timeshare Act by their statements, condoned by the same managers. Plaintiff lists ten areas in which all Plaintiffs will testify similarly. Plaintiff requests that this case be consolidated into one lawsuit, or in the alternative, that the cases be consolidated for case management, discovery, and pretrial purposes.

Defendants respond that the case should not be consolidated with *Noblitt* under Local Rule 3.2(d)(3). Further, Defendants argue that the case should not be consolidated with *Noblitt* under Rule 20(a) of the Federal Rules of Civil Procedure. Defendants assert that permissive joinder is not available in this case because the claims do not arise out of the same transaction. Defendants argue that courts have declined to permit joinder where plaintiffs' claims arise at different times, different dates, different places, or when plaintiffs allege different wrongs. Defendants assert that Plaintiff Burgess and the Noblitts entered into separate timeshare purchases, on different dates,

and allege violations of separate legal interests. Defendants point out that Plaintiff devotes much of her argument to the doctrine of pendent venue but that doctrine relates to the proper place to bring litigation, and not whether permissive joinder is appropriate. Further, Defendants argue that Tennessee Rule of Civil Procedure 23.02 has no application to the instant matter and that the Federal Rules of Civil Procedure govern this case, not the Tennessee Rules of Civil Procedure.

### B. Defendants' Motion to Modify or Clarify Order

Defendants state that they have no objection to the assignment of this case to District Judge Mattice and to the undersigned. Defendants continue that the instant case is not related to the *Noblitt* case because the cases do not arise out of the same transaction or occurrence. Defendants state that their motion to modify or clarify the Court's Order is made out of an abundance of caution to avoid any inaccuracies in the record. Plaintiff did not respond to the Motion.

## III. ANALYSIS

The Court has considered the parties' positions. Accordingly, for the reasons further explained below, the Court denies Plaintiff's Motion [**Doc. 7**] and Defendants' Motion [**Doc. 8**].

### A. Plaintiff's Motion to Consolidate

As an initial matter, the Court agrees with Defendants that it is not clear why Plaintiffs rely on Tennessee Rule of Civil Procedure 23.02 or why much of their brief is devoted to discussing issues with venue. Plaintiff has not filed a motion for class certification pursuant to *Federal* Rule of Civil Procedure 23, nor has any party challenged venue.

Aside from the above issues, it is unclear to this Court whether joinder under Federal Rule of Civil Procedure 20 is the proper Rule for consolidating two separate actions. Plaintiff's Motion requests that the Court consolidate the cases, but no party actually briefs, or let alone mentions,

11

the rule on consolidation (i.e., Federal Rule of Civil Procedure 42). Instead, the parties rely on and cite to Rule 20, which provides as follows:

> (a) Persons Who May Join or Be Joined.
>
> (1) Plaintiffs. Persons may join in one action as plaintiffs if:
>
> (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all plaintiffs will arise in the action.

Fed. R. Civ. P. 20(a). Rule 42, however, provides as follows:

> **(a) Consolidation.** If actions before the court involve a common question of law or fact, the court may:
>
> **(1)** join for hearing or trial any or all matters at issue in the actions;
>
> **(2)** consolidate the actions; or
>
> **(3)** issue any other orders to avoid unnecessary cost or delay.

Fed. R. Civ. 42(a). The distinction between the two Rules has been described as follows: "The difference between joinder under Rule 20 and consolidation under Rule 42(a) is not a distinction without a difference. Under the latter rule, before there is a consolidation there are, by definition, separate actions, for each of which a filing fee is paid and each of which must stand on its own merit." *Sunderman v. Jackson*, No. 2:14-CV-971, 2015 WL 7922420, at *3 (S.D. Ohio Feb. 25, 2015) (quoting *Hagan v. Rogers*, 570 F.3d 146, 161 (3d Cir. 2009)).

In the instant matter, Plaintiff Burgess has requested to join the Noblitts in their action pursuant to Rule 20.[1] Plaintiff Burgess is not a party to the *Noblitt* action. *See Wills v. Drabek*,

---

[1] While it is likely that the Noblitts do not have any objections to Plaintiff Burgess joining their lawsuit because the same attorneys represent both parties, the Noblitts have not moved for

No. 1:13-CV-607, 2014 WL 4388384, at *8 (W.D. Mich. Sept. 5, 2014) (stating that "only a person or entity that is already a party may make a motion for joinder") (quoting *Bourgeois v. Vanderbilt*, 251 F.R.D. 368, 370 (W.D. Ark. 2008)) (other citations omitted). Accordingly, given the above deficiencies, the Court finds Plaintiff's request not well taken at this time.

As a final matter, however, the Court observes that there are many similarities in the Complaints that were filed. Both Complaints were filed against the same Defendants, including Defendant Nicole, and the Complaints contain similar allegations. For instance, the allegations in paragraphs 14-23 in *Noblitt* are nearly identical to the allegations contained in paragraphs 78-87 in *Burgess*. The Complaints also contain similar allegations regarding the "Rental Pitch," the closing process, and other lawsuits and complaints against Bluegreen. *Compare Noblitt* [Doc. 9 at ¶¶ 24- 68] and *Burgess* [Doc. 13 at ¶¶ 95-139]. Given the similarities in these lawsuits, it appears that the parties could at least coordinate some discovery, especially in light of the fact that the same attorneys are involved in both actions. *See* Fed. R. Civ. P. 1 (explaining that the Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and *inexpensive* determination of every action and proceeding") (Emphasis added). Accordingly, the Court **ORDERS** the parties to meet and confer to determine whether this case can be consolidated with the *Noblitt* action for trial, discovery, or both. After the meet and confer, if the parties cannot agree, Plaintiffs in *Noblitt* and *Burgess* may file an appropriate motion.

B.     **Defendants' Motion to Modify or Clarify Order**

As mentioned above, Defendants filed their Motion to inform the Court that *Noblitt* and *Burgess* do not arise out of the same transaction or occurrence as required by Local Rule 3.2.

---

joinder and/or consolidation. The instant Motion was only filed on behalf of Plaintiff Joy Burgess, although the remainder of the Motion refers to "Plaintiffs."

Defendants have no objection to the assignment of the undersigned and Judge Mattice presiding over the cases.

Given the similarities in the Complaints, the undersigned ordered that *Noblitt* and *Burgess* be deemed related under Local Rule 3.2.(d)(3). Under this Local Rule, civil cases are deemed to be related when a filed case "arises out of the same transaction or occurrence and involves one or more of the same parties as an earlier numbered case." E.D. Tenn. L.R. 3.2(d)(3)(A)(2). As discussed above, all Plaintiffs have sued Bluegreen and Defendant Nicole based on a number of similar allegations. The undersigned construes the Local Rule broadly so that similar cases can be assigned to the same judges for judicial efficiency. The Court finds no further clarification or modification is necessary.

## IV. CONCLUSION

Accordingly, for the reasons set forth above, Plaintiff's Motion to Consolidate [**Doc. 7**] and Defendants' Motion to Modify or Clarify Order [**Doc. 8**] are **DENIED**.

**IT IS SO ORDERED.**

ENTER:

Debra C. Poplin
United States Magistrate Judge